IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| MICHAEL WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 07-PWG-1272-M |
| | ) | |
| DEKALB COUNTY BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

Plaintiff Michael Watkins, a tenured teacher employed as an English as a Second Language ("ESL") teacher at Collinsville High School since 2005, filed this action against defendant Dekalb County Board of Education ("Dekalb"), alleging gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1965, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), the Civil Rights Act of 1866, 42 U.S.C. § 1981 (" §1981").  The parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c) and LR 73.2.

This matter is before the court on the motion of defendant Dekalb for summary judgment pursuant to Rule 56, F.R.Civ.P.  (Doc. # 27).  Before the court are defendant Dekalb's supporting brief and evidentiary material and memorandum of law (Docs. #28, 29), the plaintiff's response thereto (Doc. # 31), and the defendant's reply brief (Doc. # 32).  Also pending is the defendant's motion to strike portion of the plaintiff's summary judgment affidavit (Doc.# 33); the plaintiff's response (Doc. # 35), and the defendant's reply (Doc. # 36).

For the reasons which follow, after carefully considering all of the pleadings, as well as the attached exhibits and declarations of the various witnesses in this case,  the defendant's motion for summary judgment is due to be GRANTED.

THE COMPLAINT/BACKGROUND

On July 5, 2007, plaintiff filed this action against Dekalb County Board of Education alleging gender discrimination and retaliation under Title VII of the Civil Rights Act of 1965, as amended, 42 U.S.C. § 2000e, et seq.

On January 24, 2008, Watkins filed a three count amended.  Counts One and Two allege gender discrimination because plaintiff was not laterally transferred to three ESL positions and five Physical Education (P.E.) positions in 2006. (Amended Complaint, Counts I and II). Count Three alleges the defendant retaliated against him, and subjected him to a hostile work environment, by (1) not giving him the ESL and P.E. positions he applied for at other schools, (2) asking him to sign a form agreeing to become highly qualified in 2006, (3) only conditionally recommending him for his ESL position after he refused to sign the form, (4) changing his classroom assignment, (5) giving him an inadequate office, and (6) changing his duties and responsibilities.  (Amended Complaint, Count III).

UNDISPUTED FACTS

The following facts are undisputed or, if disputed, viewed in the light most favorable to plaintiff, the nonmoving party.

Plaintiff Michael Watkins has a degree in physical education. In 2001, Watkins was hired by the Dekalb County Board of Education, Alabama, as a non-tenured teacher. (Affidavit of Superintendent Charles Warren at ¶ 7). Watkins  primarily taught physical education at Collinsville School, but was also assigned to one or two ESL/ELL teaching positions.[1]  (Plt. Dep. 42).

---

[1]     ESL teachers assist students who are not proficient in English (often Hispanic students). (Talley Affidavit. at ¶4).  The ESL teaching program includes classroom instruction, inclusion (instructing students in another teacher's core subject-area classroom) and pull-out (pulling students from a classroom for instruction).  (*Id.*;

In May 2003, because of proration concerns, Dekalb did not renew the contracts of teachers who were not tenured or becoming tenured that year. (Affidavit of Superintendent Charles Warren at ¶ 7; Plt. Dep. 43-45). As a result, the plaintiff, who was non-tenured, was "pink slipped," or non-renewed. (*Id*.). At that time Watkins was the sole provider for himself and his wife, who was pregnant with their first child. (Plt. Dep. 43-44). Accordingly, he "spent the summer begging" Superintendent Warren to give him his job back. (Plt. Dep. 43-44). Although most non-tenured teachers were *not* rehired that year, Superintendent Warren recommended plaintiff to the Board for re-hire. (Affidavit of Superintendent Charles Warren at ¶ 7).

In June 2003, Watkins was offered re-employment not as a PE teacher, but as a "Migrant itinerant/ESL/ELL teacher" for Collinsville. (*Id*.; Plt. Dep. 53). Migrant, or itinerant teachers, are not generally assigned to specific schools on a permanent basis, but are placed where the need is greatest. (Plt. Dep. 53). Watkins accepted the position of Migrant/Itinerant ESL teacher, then sought a voluntary transfer from Collinsville School to Valley Head School because Valley Head is much closer to Watkins' home in Henegar, Alabama. (Plt. Dep. 44-45; Affidavit of Superintendent Charles Warren at ¶ 8). The request was granted, and Watkins worked as the ESL itinerant teacher at Valley Head High School for the 2003-2004 school year. (Affidavit of Deputy Assistant Superintendent Gary Talley (Talley) at ¶ 3; Affidavit of Superintendent Charles Warren at ¶ 8).

In June 2004, Valley Head Principal Bill Monroe asked Talley, who had been principal at Valley Head before he became Deputy Assistant Superintendent in December of 2003, to move Plaintiff. (Talley Affidavit at ¶ 3). Monroe was concerned about problems between Watkins and

---

Plt. Dep. 279; Donnie Jones Affidavit. at ¶ 4). Although Watkins was only certified to teach PE, the qualifications to teach ESL were more relaxed at that time due to the need for ESL teachers. (Talley Affidavit at ¶ 7).

the assistant principal.[2] (Talley Affidavit. ¶ 3). Talley moved Watkins to an ESL itinerant assignment at Sylvania High School for the 2004-2005 school year, with additional assignments at Ider and Hedagar. Talley believed plaintiff had agreed with the move. (Talley Affidavit. ¶ 3). Watkins, however, did not learn of the move until July, 2004, when he went to his classroom at Valley Head to prepare for the next year, and encountered a teacher who informed him that she was the new ESL teacher.(Plt. Dep.193-194) Watkins wanted to stay at Valley Head, which was closer to his home, however, he did not complain, formally or informally contest the move, or allege it was discriminatory. ( Plt. Dep. 200-201).

During the 2004-05 school year, Talley received complaints about Watkins from both the Sylvania and Ider Principals. (Talley Affidavit. ¶ 5). Talley met with the Sylvania Principal and Watkins to discuss the situation. Although the Sylvania Principal asked Talley to move Watkins, he remained at Sylvania for the remainder of the school year. Watkins took notes documenting the behavior of the principal in the event he would be asked to defend his performance, and made sure to document all of their conversations because of the feelings he believed the principal had towards him[3]. (Plt. Dep. 59-69).

In August 2005, the positio2n at Sylvania was filled by a female ESL teacher. Watkins was reassigned back to Collinsville as the itinerant ESL teacher for the 2005-2006 school year. (Watkins

---

[2]     During the 2003-2004 school year, Watkins  alleged that his classroom had been broken into on two occasions, and suspected that the assistant principal was responsible because he believed  the assistant principal wanted his son to have Watkins' job. (Talley Affidavit. ¶3). The police investigated both reports, but were unable to substantiate that a second break in had occurred. (*Id*.; Plt. Dep. Ex. 5, p.140). Principal Monroe's concerns about the plaintiff's behavior led him to request plaintiff's move. (Talley Affidavit. ¶ 3).

[3]     Watkins also testified that he did not approve of the rebel flag and other decorations in the school, but never confronted the principal about that issue, although he did have "run-ins" with the principal concerning whether the school was abiding by the state mandates with regard to the ELL students. (Plt. Dep. 149-154).

Affidavit ¶ 3).  Talley again thought Watkins agreed with the move because he indicated he had gotten along with the Collinsville Principal in the past.  Though he did not say so, Watkins did not want to be transferred, and was upset about the move. (Watkins Affidavit ¶ 3)).

Watkins and his wife spoke with superintendent Charles Warren about the perceived unfairness of the transfer. Warren told them the decision had been made by assistant superintendent Gary Talley. (Watkins Affidavit ¶ 3; Pl. Dep. 202-205).  Plaintiff did not complain of discrimination to Warren during this meeting or any other.  (Warren Affidavit. ¶ 22; Plt. Dep. 205, 210-211). Watkins and his wife then complained to Tally that the move was unfair. While Watkins told Talley the move would ruin his life, he did not allege discrimination.[4]  (Plt. Dep. 207-210; Talley Affidavit. ¶ 6).  The conversation became so heated that Watkins' wife started crying. (Watkins Affidavit ¶ 3 & Ex. A).

In spite of his complaints, Watkins was assigned as an ESL teacher at Collinsville High School during the 2005-2006 school year. During that time, Watkins applied for various positions. (Watkins Affidavit ¶ 5). Watkins  sent a letter to Warren and Talley asking for a transfer to ESL at Valley Head. Watkins also sent another letter containing a blanket request for any available ESL positions, and also applied for five PE positions. Although Watkins was told by several principals with whom he interviewed that he was a competitive candidate, and to expect a call, none of the principals recommended him for any of the open positions. (Plt. Dep. 81-93; Doc. #28, Exs. 12, 15-18, 20).  Watkins was not selected for a position.

---

[4]     During the meeting with Talley, Watkins does not recall using the words "gender" or "discrimination," but does recall making clear that he thought it was unfair that female ESL teachers were being treated more favorably than he was. (Watkins Affidavit ¶ 3).

At this time the requirements for teaching ESL changed.  The standards were no longer as relaxed.  In 2006, Dekalb developed a plan to ensure all teachers would be designated as highly qualified.  Dekalb compiled a list of teachers who were teaching "out of field" *i.e.,* in an area in which they were not certified, and asked the principals to have those teachers sign a form agreeing to a plan to become highly qualified.  (Warren Affidavit ¶ 9; Plt. Dep. Ex. 5, pg. 175-176).  Dekalb used the forms to establish its teacher certification efforts.  (Warren Affidavit ¶ 9).  Because Watkins was not qualified to teach ESL/ELL, he was among many teachers asked to sign the form.[5/]  (Talley Affidavit. Ex. 2).  He was first asked to sign the form on or about August 10, 2006, prior to the filing of any complaints. (*Id*.).  Watkins believed it was an attempt to make him sign away his tenure rights, and refused to sign the form.

On August 25, 2006, Watkins filed his first EEOC charge against the defendants. (Plt. Dep.. Ex. 3).  He alleged gender discrimination and retaliation based on the involuntarily transfer to Sylvania and Collinsville and the failure to grant him a  transfer to three ESL positions and other non-ESL positions in 2006.[6/]  (AC ¶ 28; Plt. Dep. Ex. 3).

---

[5/]     As of 2006, plaintiff did not meet the requirements to teach ESL.  The federal No Child Left Behind Act (NCLB) requires teachers to be "highly qualified" (as certified by the State) in their subject area.  Failing to meet the highly qualified requirements could result in loss of critical funding for the school.  (Talley Affidavit. ¶ 7).  The NCLB does not require ESL teachers to be highly qualified in "ESL," to meet Alabama's minimum requirements; ESL teachers must be either certified (*i.e.*, "highly qualified") in English Language Arts, Elementary Education or Foreign Language or certified in ESL.  (Talley Affidavit. ¶ 7).  In 2006, Watkins was not certified in any of the four subject areas.  (*Id*.; Plt. Dep. 73-74, Ex. 5, p. 32 (e-mail response to Plaintiff from Alabama State Department of Education (ASDE) stating "With Class B certification in physical education, you are not properly certified to teach ESL.")).

[6/]     The EEOC dismissed his charge on April 6, 2007, finding the alleged involuntary transfers time barred and that the "investigation revealed no evidence to indicate that the employer's decision not to transfer you again in 2006 was based on your sex."  (Evidentiary Submission, Tab 11).

On or about September 11, 2006, Warren and Talley met with Watkins about the HQ ESL form that he had refused to sign. They again requested that Watkins sign it. Warren offered Watkins leave time to complete his ESL certification and to pay for the certification test. (*Id.*) Watkins again refused to sign. Watkins did not believe he would be able to complete the requirements in one year. He also did  not want to complete his ESL certification in hopes that he could transfer out of ESL into a P.E. position.  (Plt. Dep. 35, 40-41).  (Id.; Plt. Dep. 127-129).

On January 12, 2007, Watkins filed his second EEOC charge against the defendant,  alleging that he did not receive a transfers to the Physical Education (P.E.) position at Geraldine School  in 2006 because of gender discrimination and retaliation.  (AC ¶ 30; Plt. Dep. Ex. 4;  Plaintiff's Depo at 249). Watkins did not inform Collinsville Principal Donny Jones about the complaint. However, once he filed the EEOC complaint, he feared retaliation, so he began carrying a small tape recorder shaped like a cell phone to school, and surreptitiously recorded conversations and interactions with administrators and students. (Plt. Dep. 289).

At the conclusion of the 2006-2007 school year, Jones gave Watkins a conditional recommendation for the upcoming 2007-2008 school year.  (Jones Affidavit. ¶ 8).  Watkins believed he did so in retaliation for his filing of the EEOC complaints.  There is no evidence that Jones knew about the EEOC complaint when he made the recommendation conditional.  Jones said that he hoped that the conditional recommendation would encourage Watkins to become either certified to teach ESL or highly qualified in another field. (Jones Affidavit. ¶ 8).   The conditional recommendation did not lead to loss of pay or benefits.[7]  (*Id.*, Warren Affidavit. ¶ 9).

---

[7]     Watkins has never lost any pay or benefits.  In late 2007, Watkins obtained his ESL certification.  Dekalb retroactively increased his pay and Jones recommended him without condition for the following school year. (Plt. Dep. 494; Jones Affidavit. ¶ 8).

On July 6, 2007, Watkins filed this federal lawsuit. Watkins told no one other than his wife and his attorney about his allegations of gender discrimination or the filing of his EEOC complaints and lawsuit. (Plt. Dep. 165, 180-181, 334-35).

In August of 2007, Jones assigned Watkins to teach ESL classes to students in grades 7, 9, and 10 instead of grades 7,8, and 9 as he had the year before. (Watkins Affidavit ¶ 5). Watkins believed that the change of grades constituted a transfer under the terms of the Alabama Teacher Tenure Act, and filed a notice of contest with the board on August 17, 2007, challenging that change.[8] (Watkins Affidavit ¶ 5).

Watkins' classroom assignment was also changed for the 2007-2008 school year.[9] Instead of having his own room as he had the previous year,[10] Watkins was assigned a classroom in the main building to share with another teacher, Ms. McLain, who taught Spanish half day and ESL half day.

---

[8]   The Board did not believe that the action was a transfer, and took no action on Watkins' complaint. Watkins filed an appeal, and on February 8, 2008, the Chief Hearing Officer of the AAG's office of Administrative Hearings determined that the change of grades from 7,8, 9 to 7, 9, 10 did constitute a transfer of plaintiff's employment. (Watkins Affidavit Ex. C.). In June of 2008, Superintendent Warren recommended to the Board that it approve a request for a "transfer" to the extent that Watkins be available to teach ESL at Collinsville as an itinerant teacher in whatever grade needed. (Watkins Affidavit ¶ 20). Watkins filed a protest, and a transfer hearing was held before the school board on July 10, 2008. The Board voted to approve the transfer of Watkins from Itinerant ELL teacher at Collinsville High School, Grades 7, 8, and 10 to Itinerant ELL teacher at Collinsville High School, grades 7 -12. (*Id.*). On July 25, 2008, Watkins filed a letter contesting that decision. (Warren Affidavit., Ex. 1 at 2). A hearing was held on October 30, 2008, and on November 7, 2008, the Board's determination was upheld. (*Id.*).

[9]   Watkins had had the sole use of a classroom "on the hil," which is in an area where special education classes were taught. During the 2006-2007 school year, three special education teachers had shared one classroom. To avoid having 7-12 special education students all in the same classroom, Jones assigned the room that had been used by Watkins to special education teachers to share with itinerant half day teachers in different areas. (Jones Affidavit at ¶4 ).

[10]   Watkins was not given a specific time to recover his items from his old room. When he went to retrieve his belongings, the newly assigned teachers had removed all of his posters, family pictures and personal items, and piled them in the middle of the room like garbage. However, this was done by the new teachers, and not by Jones or anyone else in the administration. (Plt. Dep. 157-159, 337-340; Watkins Affidavit ¶ 9)

(Jones Affidavit. ¶ 4).  It was arranged that each teacher could use the room for three class periods; while one teacher used the room, the other did inclusion and pull out teaching.  (*Id*.).

Because teachers normally do not have separate offices, Watkins had always used his classroom as an office. Once he was assigned to share a classroom with the Spanish teacher, Watkins used a small room behind the auditorium as an office because it was the only place he had to go.[11/] (Plt. dep. 162).  That area was a dungeon-like storage closet.  It had no desk, and was filled with "tons of junk, and spiders." (Watkins Affidavit ¶ 8). Watkins also had a group of three students he taught in a pull-out session when the shared classroom was in use. (Jones Affidavit ¶ 4). Watkins used the store room as his office and to teach the three students, because he believed that Jones had instructed him to do so.

When Watkins questioned Jones about the classroom move, Jones responded that he would stay there until Superintendent Warren said otherwise. (Watkins Affidavit ¶ 8 ).  However, nobody told him he could not do his planning or teach the three students elsewhere.  (Plt. Dep. 342-43). Watkins did not attempt to clean up the room, because it was not his responsibility to "clean up the junk room." (Plt. Dep. 160).  After he filed a notice contesting the transfer and move with the board in August of 2007, someone mopped the floor and stacked the old computers in order. (Plt. Dep. 160-161).

---

[11/]    Jones testified that he told Watkins that he could  use the auditorium to teach a group of three pull out students. He did not intend for Watkins to use the area behind the auditorium for teaching or planning, but an area in the back of the auditorium that had a table and chairs. (Jones Affidavit ¶ 4). During his deposition, Watkins testified both that he had been transferred to the room behind the auditorium, and that he worked there because he didn't have anywhere else to go. (Plt. Dep. 160-162).  In his affidavit, filed in response to the defendant's motion for summary judgment, Watkins more specifically testified that Jones told him that he would have to occupy the space behind the stage in the school's auditorium, and directed the assistant principal to show him the area where he was to work. (Watkins Affidavit ¶ 8).

During the 2007-2008 school year, Jones also assigned Watkins the duty of bus loading before and after school, which he had never had to do before. Watkins was also asked to watch another teacher's classroom until she was able to arrive from the school where she taught half day. Another teacher asked him to make copies for her. (Plt. Dep. 399-400). Watkins felt these duties were beneath his position as a teacher, and more suited to teacher's aides, but did not so state, or complain about it to anyone. (*Id.*).

Watkins has since been moved from the shared room and auditorium. He is currently teaching in a trailer added to the school grounds. (Plt. Dep. 397-98). School administrators outfitted the room with an accordion divider so that Watkins and another teacher each have the use of one-half of the trailer for the entire work day. As noted, once Watkins obtained his ESL certification his pay was retroactively increased, after which Jones recommended him unconditionally for the following school year. (Plt. Dep. 494; Jones Affidavit. ¶ 8). On January 24, 2008, Watkins filed his amended complaint in this action. (Doc. # 9).

DISCUSSION

A.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once

that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

B.    Counts One and Two: Gender Discrimination

Watkins asserts in his amended complaint that he was discriminated against based on his gender when the defendant did not permit him to laterally transfer to any of three ESL positions and five Physical Education positions he applied for in 2006.

As previously noted, in response to a motion for summary judgment, the nonmoving party must "go beyond the pleadings," and point the Court to specific facts showing a genuine issue for trial. The defendant's motion for summary judgment and supporting brief addressed all of these allegations. Because Watkins did not respond to the defendant's argument in support of his motion

for summary judgment on these claims, he has affirmatively abandoned them. Thus summary judgment is due to be GRANTED on Counts One and Two on this basis alone[12]. *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325 (11th Cir. 2000).

It is also worth noting that the discrimination claims fail would have failed on the merits, as well.  The Eleventh Circuit has made clear that "Title VII is not a federal 'civility code.'" *Mendosa v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999). The anti-discrimination statutes only prohibit discrimination; an employer has the right to interpret its rules as it chooses. *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir. 1984).  The federal courts do not "sit as a super-personnel department that re-examines an entity's business decisions" nor do they "sit to second-guess the business judgment of employers."  *Davis v. Town of Lake Park*, 245 F.3d 1232, 1242, 1244 (11th Cir. 2001); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999)(Courts "are not in the business of adjudging whether employment decisions are prudent or fair.  Instead, [their] sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.").

Although Watkins did not agree with the decisions not to transfer him to another school, and may have legitimately believed it was unfair, he has failed to demonstrate that his failure to be selected for the positions for which he applied was due to discrimination based on his gender.

---

[12] Because the plaintiff has abandoned his claims of discrimination, the defendant's "Motion to Strike Portions of Plaintiff's Evidentiary Submission in Opposition to Defendant's Motion for Summary Judgment" (Doc. # 33) is denied, as moot.

C.    Count Three: Retaliation

In his third count, Watkins alleges that Dekalb retaliated against him by (1) not giving him

the ESL and P.E. positions, (2) asking him to sign a form agreeing to become highly qualified in

ESL, (3) only conditionally recommending him for his ESL position after he refused to sign the

form, (4) changing his classroom assignment, (5) giving him an inadequate office, and (6) changing

his duties and responsibilities.  (Amended Complaint, Count III).

The defendant's motion for summary judgment and supporting brief addressed each of the

allegations. However, in his response, Watkins did not challenge the motion with regard to: (1) the

ESL and P.E. positions, (2) asking him to sign a form agreeing to become highly qualified in 2006,

(3) only conditionally recommending him for his ESL position after he refused to sign the form.

Thus, those portions of the claim have been abandoned,[13] and the only basis upon which Watkins

relies for his retaliation charge are the events which took place during the 2007-2008 school year:

(4) the change of his classroom assignment; (5) being provided with an inadequate office; and (6)

the change to his duties and responsibilities.  (Amended Complaint, Count III).

Title VII bars an employer from retaliating against "an employee because he has opposed any

practice made an unlawful employment practice by this subchapter, or because he has made a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this

subchapter."  42 U.S.C. § 2000e-3(a); see *Gupta v. Florida Board of Regents*, 212 F.3d 571, 586

(11th Cir. 2000) ("Retaliation is separate violation of Title VII.") See also *Sullivan v. National*

---

[13]    Even if the claims had not been abandoned, summary judgement would have been granted in the defendant's
favor. Assuming Watkins could have made a *prima facie* case of retaliation, he could not have established that
the Board's reasons for not moving him into one of the several positions he applied for, asking him to sign a
form promising to become certified to teach ELL, and giving him a only a conditional recommendation when
he refused to sign the form were pretextual.

*Railroad Passenger Corporation*, 170 F.3d 1056, 1059 (11th Cir. 1999) ("Retaliation is a separate offense under Title VII; an employee need not prove the underlying claim of discrimination for the retaliation claim to succeed.")

The plaintiff bears the burden of establishing a *prima facie* case of retaliation under Title VII by showing that: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal link between his protected activity and the adverse action. *See*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68-69 (2006) (announcing "materially adverse" element);. *Davis v. Coco Cola Bottling Company Consolidated*, ____ F.3d ____, 2008 WL 314962, p.11 n.52 (11th Cir. 2008); *Goldsmith v. Bagby Elevator Company*, 513 F.3d 1261, 1277 (11th Cir. 2008); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007); *Pipkins v. City of Temple Terrace, Fla*., 267 F.3d 1197, 1201 (11th Cir.2001).

When the plaintiff relies upon circumstantial evidence to establish his claim, as here, the court applies the burden-shifting framework established in *McDonnell Douglas Corp.*, *supra*; *Holifield v. Reno*, 115 F.3d 1555, 1564-66 (11th Cir.1997) (per curiam) (*McDonnell Douglas* burden-shifting framework is also used by courts to analyze claims of indirect evidence of retaliation claims).

Under *McDonnell Douglas*, the plaintiff bears the initial burden of presenting sufficient evidence to allow a reasonable jury to determine that he has satisfied the elements of his *prima facie* case. *McDonnell Douglas*, 411 U.S. at 802.  If a *prima facie* case is established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment decision. *Id.* If articulated, the plaintiff must show that the defendant's reason was pretextual. *Id.* at 804.  To show pretext, the plaintiff must present sufficient evidence "to permit a reasonable fact finder to conclude

14

that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).  The employer's articulated reason is legitimate as long as it is honestly and reasonably held. See *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991).

(1)     *Prima Facie* Case

According to Watkins, he has presented a *prima facie* case of unlawful retaliation, and evidence from which a jury could reasonably conclude that the defendant's claim of legitimate decision making is merely pretext.[14]  Watkins asserts that after he engaged in protected activity - namely the filing of two EEOC complaints on  August 25, 2006 and January 12, 2007, as well as the filing of this action on July 6, 2007 - and was subjected to multiple acts of retaliation which constitute materially adverse employment actions.

 It is undisputed that by filing the complaints and lawsuit, Watkins engaged in a statutorily protected expression.  The threshold issues are whether the actions about which Watkins complains

---

[14]/     The plaintiff did not assert retaliation in his EEOC complaints.  "No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge." *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir.2000). See generally 42 U.S.C. § 2000e-5. "EEOC regulations provide that charges should contain, among other things, '[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices.' " I, 207 F.3d at 1332 (quoting 29 C.F.R. § 1601.12(a)(3)).

However, under the "*Gupta* rule," an EEOC filing is not a prerequisite for a  retaliation claim which grows out of the earlier filing of an EEOC charge.  See *Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 761-62 (11th Cir. 1995).  A plaintiff's judicial complaint is limited by the scope of the EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Ga. Dep't of Human Res.,* 355 F.3d 1277, 1280 (11th Cir.2004) (per curiam).  Arguably, the alleged acts of retaliation at Collinsville School could be viewed as growing out of the earlier filing of an EEOC charge.

constitute a "materially adverse employment action," and whether there is a causal connection between the protected activity and the actions of the school board.

Retaliation requires an action which is objectively, materially adverse and causes an injury or harm. *See Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006) (finding that an employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace, but the alleged actions must be objectively "materially adverse."). The Supreme Court has interpreted the second prong as requiring a plaintiff to show that "a reasonable employee would have found the challenged action materially adverse, which ... means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 543 U.S. at 68. The acts must be material and significant and not trivial. *Id*.

The Eleventh Circuit has interpreted *Burlington Northern* as "strongly suggest[ing] that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered**,"** but also noted that it held that "the significance of any given act of retaliation will often depend upon the particular circumstances." *See Crawford v. Carroll*, 529 F.3d 961, 973 n. 13 (11th Cir.2008) (citing *Burlington Northern*, 548 U.S. at 69). With regard to job reassignments, the Court in *Burlington* noted that not every job reassignment is automatically actionable because "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances,'" as some jobs may be more desirable than others. *Id.* at 71 (citation omitted); see also *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1120 (7th Cir.2009) (holding that the plaintiff must provide evidence that the employer

reassigned the plaintiff to a less desirable position to punish the plaintiff for exercising her statutory rights).

Under this framework, no reasonable juror could find the change of classroom assignment to be a materially adverse action.  It is undisputed that during the relevant time period, Collinsville High School lacked sufficient classroom space, and many of its teachers had to share classroom space with others. (Jones Affidavit, ¶ 3). It is also undisputed that no teacher was guaranteed to be assigned a specific classroom from year to year, and that classroom moves were not uncommon from one year to the next. (*Id*.).  As an ELL teacher, Watkins was assigned to teach some classes in a specific classroom, but was also assigned to perform inclusion teaching, whereby he would attend another teacher's class and assist the non-English speaking teachers. For the 2007-2008 school year, Watkins was assigned to share a room with a Spanish teacher. Each teacher was scheduled to utilize that room for three periods. When Watkins was not in the classroom, he was scheduled for inclusion teaching, and, during one period, had a group of three students to teach in a pull-out session.[15]

While a reasonable teacher might prefer not to split  a classroom with another teacher, the fact that Watkins did so for one year does not constitute a materially adverse action. Neither does the manner in which the move was taken rise to that level.[16]  It is undisputed that neither the principal nor anyone from the school board was responsible for "ripping" Watkins' posters and personal photographs from the wall and piling them in the middle of the floor "like garbage." Watkins himself testified that the teachers who had been assigned to share his former room were

[15]/   He was not scheduled to use the classroom for the pull-out session of three students, but was told to use the auditorium.

[16]/   It is of course true that another teacher was subjected to the identical conditions applicable to plaintiff.

responsible for the removal of his posters and personal belongings prior to decorating it to their tastes.

Similarly, no reasonable juror could find that the change in/addition of assignments[17] was a materially adverse action. Although Watkins complains that he was asked to make photocopies and perform other duties he believed were more suited for an aide than a real teacher, he concedes that neither Jones nor any member of the school board directed him to do so. Watkins testified that he made copies because another teacher asked him to, and he agreed because she was a "nice person." (Plt. Dep. 400). He never told her it bothered him or told anyone he was asked to do it. *Id*. With regard to bus duty, Watkins testified that helping load buses at the end of the day "removed him from doing other, more important things," and took an extra five minutes at the end of each day. Jones testified that teachers who did not have a home room period were asked to assist in other ways. No reasonable juror would find that being asked to assist with bus duty, or having a peer request help with administrative tasks constituted materially adverse actions.

Watkins was assigned to teach in the shared classroom for three periods a day, and was in other classrooms for the majority of the remaining periods. He was instructed to use the auditorium for planning and for use with his three pull-out students. He admits he was not prohibited from planning where he wanted or from teaching the three pull-out students elsewhere in the auditorium. (Plt. Dep. 342-43, 385; Jones Affidavit. ¶ 4). Moreover, Watkins testified that he took no steps to make the area more habitable, as that "wasn't his job," and further stated that after he filed his notice contesting the transfer in August 2007, the area was cleaned up. More importantly, however, even

---

[17] Changing the grade levels he was responsible for teaching is no longer claimed as an adverse action, nor would it be considered as such by the court had it not been waived.

assuming the assignment to the room behind the auditorium was a materially adverse employment action, Watkins has failed to establish the necessary causal connection. To establish the causal connection required by the third prong, a plaintiff must show that (a) "the decision-makers were aware of the protected conduct;" and (b) "the protected activity and the adverse [employment] action were not wholly unrelated." *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir.) (quotation marks, alteration, and citations omitted), *cert. denied*, ____ U.S. ____, 129 S.Ct. 404, 172 L.Ed.2d 286 (2008); *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004); *Weeks v. Harden Manufacturing Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002); *Holifield,* 115 F.3d at 1566.

"[C]lose temporal proximity may be sufficient to show that the protected activity and the adverse [employment] action were not wholly unrelated" for a *prima facie* case. *McCann*, 526 F.3d at 1376 (quotation marks and citation omitted). However, "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000); *Bass v. Bd. of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1119 (11th Cir. 2001) ("It is not enough for the plaintiff to show that someone in the organization knew of the protected expression; instead, the plaintiff must show that the person taking the adverse action was aware of the protected expression.") (emphasis added); *see, Collins v. Board of Trustees of University of Alabama*, 2006 WL 3522043, *1 (11th Cir. Dec. 6, 2006) (affirming dismissal of retaliation claims where "there is no evidence in the record that the supervisor responsible for Collins' workload was aware of his protected activity before increasing the workload.")

The actions about which Watkins complains were taken by Principal Jones at Collinsville High School.  It is undisputed that Watkins never told Jones that he had filed complaints, and never complained directly to Jones of discrimination.  Jones testified that he first learned of the EEOC complaints in approximately July, 2008, when he was involved in the transfer hearing.  (Jones Affidavit. ¶ 20).  Talley testified that he first informed Jones of the complaints "when the transfer hearing came up," after Jones called to ask what was going on.  (Talley depo p. 74).

In spite of the testimony of both Jones and Talley that Jones was not informed of Watkins' EEOC complaints until 2008, Watkins argues that it can be *inferred* that Jones was aware of the protected activity as early as August, 2007, after Watkins first filed the notice objecting to the change of classroom and grade assignments.  Even if Jones had been informed of Watkins' complaints at that time, the allegedly retaliatory actions about  which Watkins complains were taken *prior to* that date; it was in response to the change of schedule and loss of his old classroom that Watkins filed the notice of objections.   The earliest Jones could have known of the protected conduct was *after* the alleged retaliatory actions were taken.  For that reason, Watkins cannot show that Jones, the decision-maker, was aware of the protected conduct before he took the actions that are the subject of this suit.

Further weakening Watkins' causation argument is his testimony that after he filed his objection to the transfer in August of 2007, efforts were made to clean up the room in the auditorium.  Moreover, since the filing of this lawsuit, Watkins has been assigned to a new classroom of his own, which he also is able to use as his office.[18]

---

[18]    The First Circuit held in *Sabinson v. Trustees of Dartmouth College* (1st Cir., 2008), "[n]ot all unfairness is discrimination." Although the court does not make this finding, it is possible that any unfavorable treatment may have been the result of the plaintiff's refusal to sign the form regarding certification or other unprotected

In sum, the plaintiff has not made a *prima facie* case of retaliation and the defendant is entitled to summary judgment on that claim.

D.   <u>Hostile Work Environment</u>

Although it is not presented as a discrete claim, Watkins alleged in his amended complaint and implicitly argues that he is subject to a hostile work environment. A hostile work environment claim is established when it is shown that "the workplace is permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

To the extent Watkins attempts to raise a claim of hostile work environment, the *Gupta* rule, described above, does not apply. See *Gupta*, 654 F.2d at 414 (not including hostile work environment in discussion). Therefore, prior to filing a hostile work environment claim under Title VII, a plaintiff must first exhaust his administrative remedies by filing a charge with the EEOC. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001); *Gregory v. Ga. Dep't of Human Res.,* 355 F.3d 1277, 1279 (11th Cir. 2004) (per curiam). As Watkins did not exhaust his administrative remedies,  any complaint attempting to assert a hostile work environment is barred.

Based on the foregoing, the magistrate judge concludes that the motion for summary judgment (Doc. # 27) is due to be GRANTED and that this action is due to be DISMISSED.  As noted, the defendant's "Motion to Strike Portions of Plaintiff's Evidentiary Submission in Opposition to Defendant's Motion for Summary Judgment" (Doc. # 33) is due to be DENIED, as

---

behavior on his part which may have caused, as in *Sabinson, supra*, a preexisting animus towards him and had nothing to do with his gender or his EEOC complaints. The existence of any such animus - which is alluded to on several occasions in the plaintiff's depositions - would weaken his causation argument.

moot. A separate final judgement consistent with this memorandum of opinion will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the 12th day of November, 2009.

PAUL W. GREENE
CHIEF MAGISTRATE JUDGE